IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

NO. 22-1812

UNITED STATES OF AMERICA,
Plaintiff-Appellee,


-vs-

CHRISTOPHER FLOWERS, SR.
Defendant-Appellant.


_____

Appeal from the United States District Court
For the Western District of Michigan
Southern Division

_____


**BRIEF FOR CHRISTOPHER FLOWERS, SR.**



SHARON A. TUREK
Federal Public Defender

PAUL L. NELSON
Assistant Federal Public Defender
Office of the Federal Public Defender
50 Louis NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

REQUEST FOR ORAL ARGUMENT ................................................... vi

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF THE ISSUE ............................................................ 2

> Whether an unarmed person who, during the course of committing a robbery, slid his hand inside his shirt and pointed at a bank teller, qualifies for a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) for brandishing or possessing a dangerous weapon.

STATEMENT .................................................................................. 3

SUMMARY OF ARGUMENT ............................................................. 6

STANDARD OF REVIEW ................................................................. 7

ARGUMENT .................................................................................. 8

> The Court should revisit the holding of *United States v. Tate*, 999 F.3d 374 (6th Cir. 2021)………………………………………………………….8

> A.    Introduction………………………………………………...…8

> B.    Supreme Court analysis of deference owed to administrative agencies……………………………………………………9

> C.    Sixth Circuit analysis of deference owed to the Sentencing Commission over guideline commentary…………………………………………11

> D.    Proper application of the *Kisor* analysis leads to a different result – the commentary should not be followed……………………………....15

> E.    *Tate* was wrongly decided.................................................23

i

CONCLUSION ................................................................................... 24

COUNSEL'S CERTIFICATE ............................................................. 25

CERTIFICATE OF SERVICE ............................................................25

APPELLANT'S DESIGNATION OF RECORD
FROM DISTRICT COURT................................................................ 26-27

# TABLE OF AUTHORITIES

**Federal Cases**

*Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905 (1997) ................................9, 10, 13

*Bowles v. Seminole Rock & Sand Co*., 325 U.S. 410, 65 S. Ct. 1215 (1945) ...........9

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007) .......................................7

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).............................................................*passim*

*McLaughlin v. United States*, 476 U.S. 16, 106 S. Ct. 1677 (1986) ................15, 22

*Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913 (1993) ..............9, 12, 21, 22

*United States v. Bolds,* 511 F.3d 568 (6th Cir. 2007) ................................................7

*United States v. Dixon*, 982 F.2d 116 (3rd Cir. 1992) ............................................20

*United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (*en banc*) ..........11, 14, 21, 22

*United States v. Hill*, 982 F.3d 441 (6th Cir. 2020) ................................................20

*United States v. Medved*, 905 F.2d 935 (6th Cir. 1990) ...........................17, 18, 22

*United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (*en banc*) ........................12, 13

*United States v. Phillips*, 54 F.4th 374 (6th Cir. 2022) .............................11, 14, 21

*United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021) .............7, 11, 12, 13, 14, 21

*United States v. Rodriguez,* 882 F.2d 1059 (6th Cir. 1989)....................................18

*United States v. Roper*, 266 F.3d 526, 530 (6th Cir. 2001) ......................................8

*United States v. Shores*, 966 F.2d 1383 (11th Cir. 1992) .......................................20

*United States v. Tate*, 999 F.3d 374 (6th Cir. 2021).........................................*passim*

*United States v. Woodard*, 24 F.3d 872 (6th Cir. 1994) .........................................22

**Federal Statutes**

18 U.S.C. § 2331(a) ...................................................................................1

18 U.S.C. § 3231 ......................................................................................1

18 U.S.C. § 3553(a) ..................................................................................7

18 U.S.C. § 3742 ......................................................................................1

28 U.S.C. § 1291 ......................................................................................1

**United States Sentencing Guidelines**

U.S.S.G. § 1B1.1..............................................................15, 16, 17, 19, 20

U.S.S.G. § 1B1.1, comment (n. 1(d)) ...........................................................16

U.S.S.G. § 1B1.1 comment. (n.1(E)) ...........................................................15

U.S.S.G. § 2B1.1(b)(1) ...........................................................................12

U.S.S.G. § 2B3.1......................................................................16, 20, 21

U.S.S.G. § 2B3.1(b)(2) ...................................................................15, 18, 20

U.S.S.G. § 2B3.1(b)(2)(E) .............................................2, 4, 6, 8, 15, 16, 17

U.S.S.G. § 2B3.1, comment (n.1) ...............................................................16, 17

U.S.S.G. § 2B3.1, comment. (n.2) .............................................................15, 17

U.S.S.G. § 2G2.2, comment (n. 6(B)(ii)) ..............................................................11

U.S.S.G. § 4B1.2....................................................................................12

U.S.S.G. § 4B1.2(b)................................................................................12

## Federal Rules of Appellate Procedure

Federal Rule of Appellate Procedure 32(a)(7)(C) ....................................................25

## Sixth Circuit Rules

Sixth Circuit Rule 30(g)(1)(A) ...............................................................................23

Sixth Circuit Rule 32(a) ........................................................................................25

Sixth Circuit Rule 34(a) .........................................................................................vi

## Other Authorities

*United States Sentencing Commission Answers Questions Most Frequently Asked About The Sentencing Guidelines*, 1 Fed. Sent. Rptr. 423 (April 1, 1989) .............16

## REQUEST FOR ORAL ARGUMENT

The specific issue presented by this appeal, as well as the question of the proper analysis of commentary to the United States Sentencing Guidelines under *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), and the deference to be given to the commentary is of significant importance to this Court, lower courts, and the parties in federal criminal prosecutions. Because of the significance of this issue, Christopher Flowers, Sr., submits that the Court's consideration of this issue may be assisted or advanced by the presence of counsel before the Court to comment upon the issue and respond to inquiries from the Court. For this reason, and pursuant to Sixth Circuit Rule 34(a), Mr. Flowers respectfully requests oral argument in this matter.

## JURISDICTIONAL STATEMENT

Christopher Flowers, Sr., pleaded guilty to a charge of bank robbery in violation of 18 U.S.C. § 2331(a).  Subject matter jurisdiction was vested in the district court by virtue of 18 U.S.C. § 3231, which grants original jurisdiction to the district courts of all offenses against the laws of the United States.  This appeal is authorized by 18 U.S.C. § 3742, which permits an appeal of a sentence, as well as 28 U.S.C. § 1291, which authorizes appeals from final judgments of district courts.  Mr. Flowers filed a timely notice of appeal.  (R. 39, Notice of Appeal, Page ID# 169).

**STATEMENT OF THE ISSUE**

Whether an unarmed person who, during the course of committing a robbery, slid his hand inside his shirt and pointed at a bank teller, qualifies for a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) for brandishing or possessing a dangerous weapon.

## STATEMENT

Christopher Flowers, Sr., robbed a bank on February 23, 2002.  He was unarmed. Upon entering the bank, he handed a note demanding money to a teller. He pointed at the teller through his shirt and told the teller he would kill everyone in the bank if she did not hurry.  He was given approximately $1,691 in United States currency.  He took the money and the demand note and left the bank. (R. 33, Presentence Investigation Report (PSR), paragraph 14, Page ID# 105-106).

After local news coverage of the robbery showed pictures of the robber and getaway car, several people told the authorities they recognized the bank robber as Mr. Flowers.  (R. 33, PSR, paragraphs 15-19, Page ID# 106).  Mr. Flowers was arrested for absconding from supervise release.  (R. 33, PSR, paragraph 21, Page ID# 107). He eventually admitted having committed the February 23 robbery.  He was interviewed about an earlier attempted bank robbery, but said he did not remember.  He did not deny the attempt, however.  (R. 33, PSR, paragraph 27, Page ID# 108).

Mr. Flowers was charged in a two-count indictment with attempted bank robbery and bank robbery.  (R. 14, Indictment, Page ID# 32-33).  Mr. Flowers and the government entered in to a plea agreement pursuant to which he agreed to plead guilty to the bank robbery and the government agreed to dismiss the attempted bank robbery charge. (R. 22, Plea Agreement, Page ID# 49-56).

Mr. Flowers pleaded guilty before a magistrate judge. (R. 41, Plea Transcript, Page ID# 173-200). During the plea colloquy, when asked about whether he pointed something at the teller, Mr. Flowers said he had his hand in his pocket. He said he did not think the teller would have given him the money if had not given a note and had his hand in his pocket. (R. 41, Plea Transcript at 24, Page ID# 196).

The magistrate judge issued a report and recommendation recommending that Mr. Flowers' guilty plea be accepted and that he be adjudicated guilty. (R. 27, Report And Recommendation, Page ID# 62-63). The district court entered an order adopting the report and recommendation and adjudicating Mr. Flowers guilty. (R. 29, Order Adopting Report And Recommendation, Page ID# 65).

The PSR was prepared in anticipation of sentencing. (R. 33, PSR, Page ID# 102-36). The PSR calculated Mr. Flowers' advisory guideline range as 84 to 105 months, based on a total offense level of 22 and a criminal history category of VI. (R. 33, PSR, paragraph 127, Page ID# 129). The offense level was calculated by applying a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) based on Mr. Flowers having pointed what could have been a hand gun through his shirt and telling the teller he would kill everyone inside the bank if she did not hurry. (R. 33, PSR, paragraph 36, Page ID# 109). Mr. Flowers objected to the application of this enhancement, recognizing that this Court's decision in *United States v. Tate*, 999

4

F.3d 374 (6th Cir. 2021), likely was controlling, but arguing that *Tate* was wrongly decided. (R. 34, Defendant's Sentencing Memorandum at 2-5, Page ID# 138-41).

At sentencing, the district court heard argument on Mr. Flowers' objection. (R. 42, Sentencing Transcript at 4-7, Page ID# 204-207). The court overruled the objection, noting that it was bound by *Tate*. The court also noted that if the objected to enhancement had not been applied, Mr. Flowers would have been subject to a two-level enhancement for a "threat of death" and the resulting advisory guideline range would have been 77 to 96 months. (R. 42, Sentencing Transcript at 7, Page ID# 207).

The court heard allocution. (R. 42, Sentencing Transcript at 7-13, Page ID# 207-13). The court explained its sentencing rationale and announced a sentence of 88-months' imprisonment. The court also noted that it would have imposed the same sentence if it had applied only the two-level enhancement. (R. 42, Sentencing Transcript at 13-16, Page ID# 213-16).

Judgment was entered imposing the sentence. (R. 37, Judgment, Page ID# 158-64). Mr. Flowers filed a timely notice of appeal. (R. 39, Notice of Appeal, Page ID# 169).

## SUMMARY OF ARGUMENT

This Court should apply the analysis set out in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), to determine whether the commentary relating to U.S.S.G. § 2B3.1(b)(2)(E) improperly expands the definition of "dangerous weapon." The analysis reflected in *United States v. Tate*, 999 F.3d 374 (6th Cir. 2021), failed to apply *Kisor* properly.

In his concurring opinion in *Tate*, Judge Murphy concluded that the commentary at issue constituted "an improper enlargement of the guideline's scope." 999 F.3d at 388 (Murphy, J., concurring in the judgment). Although Judge Murphy's reasoning did not persuade the members of the panel, the significance of this issue cannot be overstated. Its importance in the specific context of the guideline at issue as well as in the context of future challenges to the interpretation of the guidelines is such that the issue should be revisited by the Court sitting *en banc* to ensure that this Court's decisions reflect consistent analysis in the context of interpretation of the United States Sentencing Guidelines.

## STANDARD OF REVIEW

A challenge to the interpretation of commentary in the United States Sentencing Guidelines as being in conflict with the text of the guideline is a legal issue reviewed *de novo*. *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021).

The Court of Appeals reviews the sentence under an abuse of discretion for reasonableness. *United States v. Bolds,* 511 F.3d 568, 578 (6th Cir. 2007). In doing so, the Court reviews the procedural and substantive reasonableness of the sentence. *Id*.

A sentencing court commits procedural error by failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

**ARGUMENT**

**The Court should revisit the holding of *United States v. Tate*, 999 F.3d 374 (6th Cir. 2021).**

### A.    Introduction

According to U.S.S.G. § 2B3.1(b)(2)(E), a three-level enhancement is applied "if a dangerous weapon was brandished or possessed" during a robbery.  In *United States v. Tate,* 999 F.3d 374 (6th Cir. 2021), this Court held that a hand thrust into an opaque shoulder bag during a bank robbery fell within the scope of this enhancement:   "We now join this uniform line of cases treating a robber that uses his concealed hand to reasonably suggest the existence of a weapon as having committed an act sufficient to satisfy § 2B3.1(b)(2)(E)." 999 F.3d at 384.  This is binding precedent in this Circuit.

Christopher Flowers acknowledges that a prior published opinion of this Court is binding. *United States v. Roper*, 266 F.3d 526, 530 (6th Cir. 2001).  He raised the issue at sentencing to preserve it for further review.  He brings this appeal to further preserve the issue and to preserve his ability to respectfully request this Honorable Court to revisit the issue *en banc*.  Mr. Flowers submits that, as Judge Murphy recognized in his concurrence in *Tate*, 999 F.3d at 388-92, the proper analysis to apply to resolve this issue was that set out in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), which describes the analysis to determine the amount of deference owed by the courts to administrative interpretations of an agency's rules.

**B.**    **Supreme Court analysis of deference owed to administrative agencies.**

In *Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913 (1993), the United States Supreme Court held that the commentary to the United States Sentencing Guidelines "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38, 113 S. Ct. at 1915. That conclusion was based on the Supreme Court's analogy of the guidelines being the "equivalent of legislative rules adopted by federal agencies." The commentary is "akin to an agency's interpretation of its own legislative rules" and "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" 508 U.S. at 45, 113 S. Ct. at 1919 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S. Ct. 1215, 1217 (1945)). The Supreme Court also stated that, while revisions to the guidelines may be incorporated by amendments to the guidelines, "another method open to the Commission is amendment of the commentary, if the guideline which the commentary interprets will bear the construction." 508 U.S. at 46, 113 S. Ct. at 1919.

The Supreme Court recently provided guidance on the proper deference in light of *Seminole Rock* and *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905 (1997), often referred to as "*Auer* deference." *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). In *Kisor*, the Court was asked to overrule *Auer* and *Seminole Rock* in terms of those

cases' deference "to agencies' reasonable readings of genuinely ambiguous regulations." 139 S. Ct. at 2408. The Court declined to do so and stated:

> *Auer* deference retains an important role in construing agency regulations. But even as we uphold it, we reinforce its limits. *Auer* deference is sometimes appropriate and sometimes not. Whether to apply it depends on a range of considerations that we have noted now and again, but compile and further develop today. The deference doctrine we describe is potent in its place, but cabined in its scope.

*Id*. The Court set out three requirements for *Auer* deference to apply: First, the regulation being reviewed must be "genuinely ambiguous." 139 S. Ct. at 1215. Second, if the regulation is genuinely ambiguous, it must come within the "zone of ambiguity the court has identified after employing all its interpretive tools." 139 S. Ct. at 2416. Finally, "a court must make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." 139 S. Ct. at 2416.

The Supreme Court "laid out some especially important markers for identifying when *Auer* deference is or is not appropriate." *Id*. The first "marker" is that "the regulatory interpretation must be one actually made by the agency." *Id*. The second is that "the agency's interpretation must in some way implicate its substantive expertise." 139 S. Ct. at 2417. The third marker is that "an agency's reading of a rule must reflect 'fair and considered judgment' to receive *Auer* deference." *Id*.

**C.    Sixth Circuit analysis of deference owed to the Sentencing Commission over guideline commentary.**

This Court recently has had opportunities to consider the deference due the Sentencing Commission in interpretation of guideline commentary.  In *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (*en banc*), this Court concluded that the commentary expanded the scope of the guideline.  In both *United States v. Riccardi*, 989 F. 3d 476 (6th Cir. 2021), and in *United States v. Phillips*, 54 F.4th 374 (6th Cir. 2022), the Court applied *Kisor* analysis to determine how much deference was owed to guideline commentary.    Like *Havis, Riccardi* held that certain guideline commentary was ineffective because the commentary expanded the scope of the text of the guidelines at issue.   *Phillips* concluded that the guideline commentary to U.S.S.G. § 2G2.2 at issue was entitled to deference.  The commentary stated that each video of child pornography "shall be considered to have 75 images."  U.S.S.G. § 2G2.2, comment. (n. 6(B)(ii)).

In *Havis*, decided three weeks before *Kisor*, the Court noted that the rulemaking function of the Sentencing Commission is subject to oversight by Congress and also to the requirements of the Administrative Procedure Act (APA).  However, guideline commentary is not subject to either the APA or Congressional review and it therefore may only interpret the text of the Guidelines.  927 F.3d at 385-86.  "Thus, we need not accept an interpretation that is 'plainly erroneous or

inconsistent with the' corresponding guideline." 927 F.3d at 386, citing *Stinson*, 508 U.S. at 45, 113 S. Ct. at 1919.

Applying this rationale, the Court held that the commentary to U.S.S.G. § 4B1.2, which added attempt crimes to the list of controlled substance offenses under U.S.S.G. § 4B1.2(b) expanded the definition of "controlled substance offense" and concluded: "The Commission's use of commentary to add attempt crimes to the definition of 'controlled substance offense' deserves no deference. The text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substance offenses." 927 F.3d at 387. See also *United States v. Nasir*, 17 F.4th 459, 468-72 (3d Cir. 2021) (*en banc*) (applying *Kisor* and concluding that commentary to U.S.S.G. § 4B1.2(b) improperly expands scope of guideline by adding inchoate offenses to definition of "controlled substance offenses").

In *Riccardi*, the Court considered a definition supplied by the commentary. There, the Court reviewed U.S.S.G. § 2B1.1(b)(1), which instructs a sentencing court to determine the amount of "loss" caused by an offense, and Application Note 3(F)(i), which set the minimum "loss" based on unauthorized charges using a counterfeit or unauthorized access device at $500. 989 F.3d at 481-82.

Among other arguments, the defendant argued on appeal that the $500 minimum loss amount conflicted with the text of the guideline. This court agreed, stating: "Commentary may only interpret the guideline. And a $500 mandatory

minimum cannot be described as an interpretation of the word 'loss.' Rather, it is a substantive legislative rule that belongs in the guideline itself to have force." 989 F.3d at 485.

This Court applied the *Kisor* analysis in reaching this conclusion in *Riccardi*. 989 F.3d at 485-89. This Court noted: "*Kisor*'s limitations on *Auer* deference restrict an agency's power to adopt a new legislative rule under the guise of interpreting an old one." 989 F.3d at 485. It was further stated "*Kisor* must awake us 'from our slumber of reflexive deference' to the commentary." *Id*., (citing *United States v. Nasir*, 982 F.3d 144, 177 (3d Cir. 2020) (*en banc*) (Bibas, J., concurring in part)).[1]

Under its *Kisor* analysis, the Court determined that the word "loss" was ambiguous and that the mandatory $500 minimum loss did not fall within the zone of ambiguity. The Court determined that the $500 loss amount was not "mere interpretation" of the guideline text, stating:

> The Commission's decision to adopt this minimum loss amount was instead a substantive policy choice, one presumably based on empirical factors like the difficulty of determining actual losses in cases involving ''access devices'' or the ''average'' loss in those types of cases. Yet if the Commission seeks to keep individuals behind bars for longer periods of time based on this type of ''fictional'' loss amount, this

---

[1] The Third Circuit initially decided *Nasir en banc* in 2020. *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) (*en banc*). The Supreme Court vacated that decision on other grounds and remanded the matter to the Third Circuit. On remand, the Third Circuit reiterated its analysis of the issues not implicated in the Supreme Court proceedings. The current citation to the comment cited in *Riccardi* is 17 F.4th at 472 (Bibas, J., concurring).

substantive policy decision belongs in the guidelines, not in the commentary.

989 F.3d at 487.

In *Phillips*, the majority agreed that *Kisor* "provided the framework that we must follow in determining whether to defer to the Guidelines commentary." 54 F.4th at 379. The Court conducted *Kisor* analysis, although Judge Larsen accused the majority of "reflexively deferring to an agency's interpretation of an unambiguous Sentencing Guideline." 54 F.4th at 386-87 (Larsen, J., concurring in the judgment). The majority concluded that the text of the guideline was genuinely ambiguous, that the 75:1 rule was within the zone of ambiguity, and that the "character and context" of the 75:1 rule entitled it to deference. 54 F.4th at 380-86. There was no dispute, however, that *Kisor* analysis must be applied.

*Riccardi* and *Phillips* can be seen as applying the stricter analysis of *Kisor* rather than reflexive deference. This Court has held that *Kisor* analysis controls in determining whether to defer to commentary. *Phillips*, 54 F. 4th at 379, citing *Riccardi*, 989 F.3d at 484-85. *Havis*, although decided shortly before *Kisor*, is not inconsistent with *Kisor*'s methodology. That methodology should have been applied in *Tate*.

14

**D.    Proper application of the *Kisor* analysis leads to a different result – the commentary should not be followed.**

Again, the majority opinion in *Tate* controls. However, this Court has the ability and authority to reconsider *Tate* by granting *en banc* rehearing in this case to conduct proper *Kisor* analysis. That should be done to maintain uniformity of the Court's decisions.

In his concurring opinion, Judge Murphy states:

> This case thus turns on a straightforward question: Can the phrase ''possessed'' a ''dangerous weapon'' in § 2B3.1(b)(2)(E) be reasonably read to cover a robber who only pretends to have such a weapon by concealing his hand in a bag? *See id.* §§ 1B1.1 cmt. n.1(E), 2B3.1 cmt. n.2. Both the plain meaning of ''dangerous weapon'' and the legal backdrop against which the Commission first used this phrase show that we should take this commentary for what it is: an improper enlargement of the guideline's scope.

999 F.3d at 388. This analysis is consistent with *Kisor*.

The majority in *Tate*, on the other hand, states it "rest[s] on the text of the Guidelines alone, as informed by *McLaughlin* [*v. United States*, 476 U.S. 16, 106 S. Ct. 1677 (1986)] and the uniform precedent holding that a dangerous weapon extends to the employment of a simulated weapon." 999 F.3d at 383. However, the cases cited by the majority generally are pre-*Kisor* cases which, by definition, do not apply the proper analysis. The cases cited by the majority may have an expansive definition of "dangerous weapon." However, the evolution of the definition in the guidelines shows significant changes and additions.

15

Initially, "dangerous weapon" was defined for purposes of § 2B3.1 in U.S.S.G. § 1B1.1, comment. (n. 1(d)) (1987). *See* U.S.S.G. § 2B3.1, comment. (n.1). (1987). That definition stated: "'Dangerous weapon' means an instrument capable of inflicting death or serious bodily injury." A three-level enhancement applied in § 2B3.1 "if a firearm or other dangerous weapon was brandished, displayed or possessed." U.S.S.G. § 2B3.1(b)(2). This definition did not remain unchanged for long, but the change was noteworthy.

On November 30, 1988, the Sentencing Commission's Technical Assistance Service acknowledged, at least unofficially, that a "toy gun" did not qualify for the enhancement under U.S.S.G. § 2B3.1(b)(2):

> **Question: Does the firearm enhancement in a bank robbery case apply if the defendant used a toy gun?**
>
> Answer: No. The guideline for robbery at §2B3.1(b)(2) provides for an increase in the offense level for the presence of a firearm or other dangerous weapon. Application Note 1 refers to the commentary to §1B1.1 for definitions of firearm and dangerous weapon. A firearm is defined as a weapon that is designed or may be readily converted to expel any projectile by the action of an explosive. Dangerous weapon" is defined as an instrument capable of inflicting death or serious bodily injury. Because a toy gun does not meet the requirements of a firearm or dangerous weapon, the enhancement should not be applied. This result would be true for *sentencing purposes* even in a jurisdiction in which the case law supports a conviction for *armed* bank robbery by a defendant using a toy gun.

*United States Sentencing Commission Answers Questions Most Frequently Asked About The Sentencing Guidelines*, 1 Fed. Sent. Rptr. 423, 425-26 (April 1, 1989) (emphasis in original). Although it did not necessarily represent the official position

16

of the Sentencing Commission, this interpretation of the relevant commentary is significant.

In 1989, the definition of "dangerous weapon" was changed to "clarify" the definition. The new definition stated: "'Dangerous weapon' means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon." U.S.S.G. § 1B1.1, comment. (n. 1(d)) (1989). In combination, Application Note 2 was added to § 2B3.1, stating: "When an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(C)." U.S.S.G. § 2B3.1, comment. (n.2). This Court noted the significance of this change as an addition to the scope of the definition.

In *United States v. Medved*, 905 F.2d 935 (6th Cir. 1990), an appeal was taken, among other grounds, from a sentence imposed for a bank robbery that occurred on October 11, 1988. The defendant admitted using a toy gun during the robbery. 905 F.2d at 936.

The sentence was imposed shortly before the 1989 amendment took effect adding the comment: "When an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(C)." The sentencing court in *Medved* noted that a

17

three-level enhancement would have applied if the toy gun used during the robbery

had been real and applied a two-level upward departure.  This Court upheld the

departure, stating in relevant part:

> As to the upward adjustment in the offense level, Judge Dowd recognized that the guidelines would have mandated an increase in the offense level by three if the defendant had brandished or displayed an actual firearm during the robbery. U.S.S.G. § 2B3.1(b)(2). *Pointing out that the use of a replica was a concept not addressed in the guidelines, Judge Dowd increased the offense level by two.*
>
> Citing *United States v. Rodriguez,* 882 F.2d 1059, 1067 (6th Cir.1989), *cert. denied,* 493 U.S. 1084, 110 S. Ct. 1144, 107 L.Ed.2d 1048 (1990), Mr. Medved argues that "mere use of a toy gun" cannot be considered "unusual" enough to warrant an increase. On November 1, 1989, however, less than four months after sentence was imposed here, the Sentencing Commission amended the guidelines to provide that brandishing or displaying an object that merely "appeared" to be a dangerous weapon would result in the same three-level increase called for where an actual dangerous weapon is used. (This change was accomplished by adding the following instruction to Application Note 1(d) following U.S.S.G. § 1B1.1: "Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.") *Judge Dowd was obviously correct in realizing that as of July 5, 1989, the question of fake weapons had not been taken into consideration adequately.*

905 F.2d at 941 (emphasis added).  Contemporaneous with the adoption of the

amendment, then, this Court concluded that the newly added guideline commentary

did more than just interpret the guideline, it expanded the scope of the guideline.

This conclusion was consistent with the Sentencing Commission's Technical

Assistance Service's acknowledgement of the scope pre-1989 guidelines as cited

above.  Before November 1, 1989, a toy gun did not qualify as a "dangerous weapon"
for sentencing purposes.  Certainly, a finger also would not qualify.

Further changes to the guidelines were made a few years later, also through
amendments to the commentary. In 2000, Amendment 601 to the guidelines was
adopted and it became effective on November 1, 2000.  In relevant part, Amendment
601 stated:

**Amendment:**

* * *

The Commentary to §1B1.1 captioned "Application Notes" is amended
in Note 1 by striking subdivision (d) in its entirety and inserting the
following:

"(d) 'Dangerous weapon' means (i) an instrument capable of inflicting
death or serious bodily injury; or (ii) an object that is not an instrument
capable of inflicting death or serious bodily injury but (I) closely
resembles such an instrument; or (II) the defendant used the object in a
manner that created the impression that the object was such an
instrument (e.g. a defendant wrapped a hand in a towel during a bank
robbery to create the appearance of a gun)."

* * *

The Commentary to §2B3.1 captioned "Application Notes" is amended
by striking Note 2 in its entirety and inserting the following:

"2. Consistent with Application Note 1(d)(ii) of §1B1.1 (Application
Instructions), an object shall be considered to be a dangerous weapon
for purposes of subsection (b)(2)(E) if (A) the object closely resembles
an instrument capable of inflicting death or serious bodily injury; or (B)
the defendant used the object in a manner that created the impression

19

that the object was an instrument capable of inflicting death or serious bodily injury (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)."

* * *

**Reason for Amendment:**

* * *

The definition of "dangerous weapon" in Application Note 1(d) of §1B1.1 also is amended to clarify under what circumstances an object that is not an actual, dangerous weapon should be treated as one for purposes of guideline application. The amendment is in accord with the decisions in <u>United States v. Shores</u>, 966 F.2d 1383 (11th Cir. 1992) (toy gun carried but never used by a defendant qualifies as a dangerous weapon because of its potential, if it were used, to arouse fear in victims and dangerous reactions by police or security personnel) and <u>United States v. Dixon</u>, 982 F.2d 116 (3rd Cir. 1992) (hand wrapped in a towel qualifies as a dangerous weapon if the defendant's actions created the impression that the defendant possessed a dangerous weapon).

The amendment also deletes the term "displayed" wherever it appears in the <u>Guidelines Manual</u> in an enhancement with "brandished." Because "brandished" applies in any case in which "all or part of the weapon was displayed," the Commission determined the inclusion of "displayed" in these enhancements is redundant. This part of the amendment is not intended to make a substantive change in the guidelines.

Significantly, the last paragraph of this amendment concludes with the statement: "This part of the amendment is not intended to make a substantive change in the guidelines." The phrase "[t]his part of the amendment" must refer to the last paragraph. Applying the maxim "*inclusio unius est exclusivo alterius*" the statement that the last part is not a substantive change implies that the other parts of the amendment *are* substantive changes. This maxim applies to interpretation of the

20

guidelines. *See United States v. Hill*, 982 F.3d 441, 445 (6th Cir. 2020) ("According to the *inclusio unius est exclusivo alterius* principle, the presence of only one path to reducing a career offender's sentence implies that other downward adjustments are inapplicable.").

This Court has made clear that substantive policy decisions by the Sentencing Commission must be made in the text of the guidelines, not in the commentary. *Riccardi*, 989 F.3d at 487. With regard to substantive policy decisions, the Court "this court does not owe—indeed cannot owe—any deference." *Phillips*, 54 F. 4th at 390, citing *Riccardi, supra*; *Havis*, 927 F.3d at 386.

The above discussed amendments to the guidelines expanded the scope of the definition of "dangerous weapon" over time. These changes were made during a period when *Stinson* was the controlling authority regarding interpretation of the guidelines and commentary.

Cases that *Tate* relies on as "precedent" apparently accepted the commentary at face value without considering the issue now raised by *Kisor* which is central to this appeal: "With only cursory references to the commentary, we have previously held that the text of § 2B3.1(b)(2)(E), through its use of the term 'dangerous weapon,' necessarily covered the use of simulated weapons in robbery." 999 F.3d at 382. However, the cited cases would have given significant deference to the commentary under *Stinson*.

21

One case cited by *Tate* in support of its contention that "the text of §
2B3.1(b)(2)(E), through its use of the term 'dangerous weapon,' necessarily covered
the use of simulated weapons in robbery" was *United States v. Woodard*, 24 F.3d
872, 874 (6th Cir. 1994), which in turn cited *United States v. Medved*, 905 F.2d 935,
939-40 (6th Cir. 1990), as "a case interpreting 18 U.S.C. § 2113(d) in light of
*McLaughlin* to hold that a toy gun could be viewed as a dangerous weapon."
Citation of *Medved* may be appropriate to discuss interpretation of § 2113(d), but
*Tate*'s citation of *Medved* and § 2113(d) ignores *Medved*'s discussion of the
guideline enhancement examined above.

Tate says "the federal robbery Guidelines' commentary merely echoes how
some courts have long viewed a dangerous weapon to include *both* objects that are
(1) per se dangerous, as well (2) those that are used in a manner that is likely to
endanger life." 999 F.3d at 379.   But *Medved* makes clear that even if the
*commentary* in question may have echoed some courts' views, the *text* of the
guideline was limited. According to *Medved*, the commentary in 1989 added to the
scope of the guideline.

Although amendments to the commentary may have passed muster under
*Stinson*, they clearly would not have been acceptable under *Havis* or *Kisor*. Under
the current method of analysis, the commentary to U.S.S.G. § 2B3.1 should not be
applied.

22

### E. *Tate* was wrongly decided.

Proper application of the analysis set out in *Kisor* leads to a different result. Simply put, *Tate* reflects "reflexive deference" to the guideline commentary at issue here. The several amendments to U.S.S.G. §§ 1B1.1 and 2B3.1 and the relevant commentary were not mere "interpretations" of the text of the guidelines. Each amendment expanded the scope of the § 2B3.1(b)(2)(E) beyond its original purpose.

Were this appeal being decided on a clean slate, application of *Kisor* would have resulted in the conclusion that Application Note 2 to U.S.S.G. § 2B3.1 is not entitled to deference and it should not have been applied. The proper remedy would be to vacate Christopher Flowers' sentence and remand this matter for resentencing using a properly calculated advisory guideline range. If *Tate* precludes that relief, this matter should be considered for further review by the Court sitting *en banc*.

## CONCLUSION

For all the above reasons, Christopher Flowers, Sr., respectfully requests this Honorable Court to vacate his sentence and remand this matter for resentencing.  In the alternative, Mr. Flowers respectfully requests this Honorable Court to issue an opinion from which *en banc* review can be obtained.

Respectfully submitted,

SHARON A. TUREK
Federal Public Defender

/s/ Paul L. Nelson
PAUL L. NELSON
Dated:  February 3, 2023                    Assistant Federal Public Defender

## COUNSEL'S CERTIFICATE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this Brief contains 5,170 words, as counted by Microsoft Word.

/s/ Paul L. Nelson
PAUL L. NELSON
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing was filed electronically on February 3, 2023, and that a copy was made upon opposing counsel through the Court's CM ECF system.

/s/ Paul L. Nelson
PAUL L. NELSON
Assistant Federal Public Defender

## APPELLANT'S DESIGNATION
## OF RECORD FROM DISTRICT COURT

Appellant, pursuant to Sixth Circuit Rule 30(g)(1)(A), hereby designates the following filings in the district court's record as items relevant to the disposition of this appeal.

**Pleadings**

| Docket Entry No. | Document | Date | Pg. ID# |
|---|---|---|---|
| N/A | Docket Sheet 1:22-cr-66 | N/A | N/A |
| R. 14 | Indictment | 05/17/2022 | 32-33 |
| R. 22 | Plea Agreement | 05/20/2022 | 158-164 |
| R. 27 | Report And Recommendation | 05/31/2022 | 62-63 |
| R. 29 | Order Adopting Report And Recommendation | 06/16/2022 | 65 |
| R. 34 | Defendant's Sentencing Memorandum | 09/04/2022 | 137-149 |
| R. 37 | Judgment | 09/13/2022 | 158-164 |
| R. 39 | Notice of Appeal | 09/13/2022 | 169 |

**Transcripts of Hearings**

| Docket Entry No. | Document | Date | Pg. ID# |
|---|---|---|---|
| R. 41 | Plea Transcript | 05/27/2022 | 173-199 |
| R. 42 | Sentencing Transcript | 09/12/2022 | 201-222 |

**<u>Confidential Documents</u>**

| Docket Entry No. | Document | Date | Pg. ID# |
|---|---|---|---|
| R. 33 | Final Presentence Investigation Report (*Restricted Access*) | 08/31/2022 | 102-135 |